Cassie Craven, 7-5664
Longhorn Law Limited Liability Company
109 E. 17th St. Suite 11
Cheyenne, WY 82001
ccraven.law@gmail.com
(307)-823-3062

**FILED**



11:07 am, 12/7/23

**Margaret Botkins
Clerk of Court**

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| AMANDA MCDADE,<br>v. | **DEMAND FOR JURY TRIAL**<br>COMPLAINT<br><br>CASE NO. 23-CV-232-SWS |
| WESTON COUNTY HOSPITAL<br>DISTRICT DBA WESTON COUNTY<br>HEALTH SERVICES,<br><br>    Defendant. | |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, Amanda McDade by and through her attorney, Cassie Craven of Longhorn Law Limited Liability Company, and for her causes of action, states as follows:

### NATURE OF THE ACTION

This is an action under federal law, pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1988 and the Americans with Disabilities Act of 1990 as amended and in conjunction with the Wyoming Fair Employment Practices Act of 1965. Plaintiff seeks legal and equitable relief and damages and seeks to be made whole as a result of the Defendant's illegal conduct and obligations as a both a governmental entity, and employer.

### JURISDICTION, VENUE AND PARTIES

1. This action is authorized and instituted under the Constitution and laws of the United States pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, 42. U.S.C. §1988 and the

1

Americans with Disabilities Act of 1990 as amended and in conjunction with the Wyoming Fair Employment Practices Act of 1965. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1343 and 1367.

2. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343.

3. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

4. Jurisdiction over Plaintiff's state law claim is proper under 28 U.S.C. § 1367(a) because it is so related to Plaintiff's claims arising under federal law that it forms part of the same case or controversy.

5. Venue is proper in the District of Wyoming pursuant to 28 U.S.C § 1391(b). All of the events and omissions alleged herein occurred within the state of Wyoming. At the time of the events and omissions giving rise to this litigation, Defendants were a Wyoming entity.

6. Pursuant to 28 U.S.C. §1391 proper venue for this cause of action is the United States District Court for the District of Wyoming. The unlawful employment practices complained of herein occurred within the District of Wyoming.

7. Plaintiff Amanda McDade initiated a timely complaint with the EEOC alleging discrimination practices and behaviors and hostile work environment. She received a *Notice of Right to Sue* letter from the EEOC dated September 11, 2023.

8. This *Complaint* is being filed within ninety (90) days of receipt of the EEOC's *Notice of Right to Sue* issued to Plaintiff Amanda McDade. This *Notice of Right to Sue* was issued by the EEOC on September 11, 2023.

9. Plaintiff McDade is a female who is a United States Citizen and resident of, Upton, Wyoming.

10. At all times material hereto, Plaintiff Amanda McDade was an employee of Weston County Hospital District dba Weston County Health Services[1], which is a governmental entity, from June 11, 2019 until October 14, 2021.

11. Defendant is the local hospital.

12. At all times material hereto, Defendant's agents and employees were acting within the scope of their employment and with the knowledge and consent, and at the direction of Defendant under relevant principles of *respondeat superior*.

13. At all times material hereto, Defendant was acting pursuant to lawful authority and under the color of state law.[2]

14. The notice of claim required pursuant to W.S. § 1-39-113 was filed on December 5, 2023 in accordance with relevant subsections therein. The claim was in compliance with the signature and certification requirements of article 16, section 7 of the Wyoming Constitution.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

15. On June 11, 2019, Plaintiff accepted employment with the Defendant and shortly thereafter became the Human Resources Generalist.

---

[1] For Defendant's Self-Described Contact information confirming this statement see https://www.wchs-wy.org/contact-a-directions last accessed October 18, 2023.

[2] At this time Plaintiff is not yet naming as defendants other individuals involved in this case, as further described below, nor is Plaintiff naming the County, Town, or other official capacity defendants. If discovery supports adding additional parties, Plaintiff will seek leave of Court to do so.

16. In her position under Defendant's employ, she had access to numerous company records including but not limited to, employee records, payroll, Kronos time keeping and operation documentation.

17. During the course of her employment, the Plaintiff raised concerns of money mismanagement, illegality, and ethics through the proper chain of command. Instead of this being remedied, Plaintiff was retaliated against and subjected to a hostile work environment.

18. The Plaintiff reported as a whistleblower through the proper process, including, to the Board of Trustees President at the time, Connie James. The report additionally included allegations of discriminatory policies that were in place and labor law violations. These reports were not kept confidential by the Defendant and its agents.

19. Instead of remedying the situation, the Defendant requested the Plaintiff modify records in the documentation to cover up what had occurred. The Plaintiff believed this request to be at the very least, unethical and likely illegal. She did not comply with these requests.

20. The Plaintiff was entitled to whistleblower protections, and instead was placed in an illegal and hostile work environment.

21. The facts of this case demonstrate the malevolent extent to which the Defendant will go to cover up their misdeeds. Resulting in the Plaintiff being threatened with a *Title 25 mental health hold*. This experience was the most frightening, traumatizing event that has ever occurred in Plaintiff's life.

22. This frightening tale begins on October 14, 2021 when the Plaintiff was occasioned by an unprompted appointment call from the office of her treating physician, and employee of the Defendant, Dr. Thurgood.

23. Dr. Thurgood's nurse, Amanda Lesmeister, called the Plaintiff during work hours. The Plaintiff returned the missed call, as she assumed it was a human resources inquiry, in light of her position, work hours and the fact that she did not have a medical appointment that day.

24. To the Plaintiff's immediate surprise, Ms. Lesmeister stated that she was calling on behalf of Dr. Thurgood who wanted the Plaintiff to come into her office to discuss medication and possible concerns with it.

25. The Plaintiff responded that she did not have an appointment or any medications that she was having issues with nor did she have any concerns which. She expressed her confusion and the fact that she had no need for an appointment, nor had she made or requested one.

26. Ms. Lesmeister, also seemingly confused, reiterated that she didn't know, but was just doing what she asked and would let Dr. Thurgood know she didn't need an appointment.

27. The Plaintiff hung up the phone and began fully realizing her anxiety symptomology. Her chest tightened, she experienced shortness of breath and more physical symptoms of what was an anxiety attach physically manifesting in the body. Hoping this was a strange mix up, she tried to refocus and continued to work in her office the best that she could.

28. A couple of hours later, Dr. Thurgood walks into the Plaintiff's office, uninvited and unannounced.

29. The Plaintiff, immediately taken aback tells Dr. Thurgood that she told Ms. Lesmeister that she did not have an appointment and there must be a mix up.

30. Dr. Thurgood responded, "Well, that is not what she told me. Do you mind if I close these doors in your office so that we can have a confidential conversation with me here as your doctor first and foremost?"

31. Before the Plaintiff could articulate an answer, Dr. Thurgood closed first, the Plaintiff's supervisor's large door. He wasn't even at work.

32. Then, Dr. Thurgood closed the Plaintiff's office interior door. She locked eyes with the Plaintiff and Defendant felt her blood chill in fear. The Plaintiff pressed "record" on her phone. She had a feeling that this was not a friendly house visit from a treating physician. This was unexpected, unscheduled and immediately isolating and intrusive.

33. Dr. Thurgood stated various confidential facts regarding previous treatments of the Plaintiff.

34. She then followed up with statements such as: "Here's the thing, they're so concerned for you." Dr. Thurgood made clear that "they" meant those in charge of the Hospital.

35. The Plaintiff expressed, "No they're not. They're so concerned in saving their own (expletive) right now."

36. Dr. Thurgood responded, "They're probably both, because they've got an employee they're concerned about with what you've taken to the board, I don't know the details but, they're concerned about that but then they're also concerned with just some of the things that you've said and things that would suggest an almost manic."

37. The Plaintiff responded, "I'm not manic in any way shape or form."

38. Dr. Thurgood stated, "You don't look manic to me right now…umm so it's hard you know when I'm hearing things from one side of things and then seeing another. You know I've got to be objective…it's just a tricky thing."

39. Dr. Thurgood said, "My concern, my biggest concern here is that they are talking about *potentially uhh I hope that it's ok I'm telling you this, they're talking about potentially involuntary commitment*...and I can't do that, it would be a conflict of interest. I'm like an employee here and you are in HR, I am your physician and will continue to be."

40. Plaintiff was blindsided in horror. It immediately became clear to Plaintiff that the Defendant was attempting an intimidation effort. Dr. Thurgood strangely expressed having little involvement ever with a Title 25 proceeding, only doing one in residency and another where a person threatened others with a knife.

41. Just when Plaintiff believed that this terrible encounter could not get worse and must be nearing its end, the physician attempted to coerce the Plaintiff stating, "I don't really know what to do, I mean my thought initially was to keep, to try to keep them from, I don't know what it's going to take to keep them from *resorting to commitment* you know what I mean. Like if I, initially I was like if I can get, like when they initially called me if I could get you to come into the office and we can work through this and maybe come with a umm...or have to adjust your medication just for good faith as a good faith measure toward them, like something like that."

42. Dr. Thurgood said, "I don't know this is definitely new territory for me, this is not a position I've ever been put in before."

43. Regarding an involuntary commitment against the Plaintiff, Dr. Thurgood expressly admitted, "I think that's the position they're wanting me to make that assessment and I can't make that assessment, it's a conflict of interest."

44. The encounter only ended when the Plaintiff left the Defendant's facility while outright expressing to Dr. Thurgood her fear, terror and shock that this was occurring. She

7

legitimately expected the cops to meet her at the door with a straight jacket to see their malicious plan through. Fortunately, they didn't go that far.

45. The Plaintiff was able to escape and tendered her resignation via email, remaining in a manifestation of anxiety symptoms for days after the event, and in fact still suffers some manifestations to this day on an ongoing basis.

46. The ending to this dramatic scene, is nothing less than a constructive termination under law. The Plaintiff had no choice but to escape in complete fear and intimidation and resign her position effective immediately.

47. A witness notified the Defendant that when the Plaintiff left the building, Dr. Thurgood and high-ranking hospital officials were seen entering the same room. With the door slightly open, a passerby caught the tail end of a conversation, in which Dr. Thurgood said, "(inaudible) medications...keep me posted."

## COUNTS 1-2: DEFENDANT HAS COMMITTED WHISTLEBLOWER RETALIATION IN VIOLATION OF W.S. § 35-2-910 AND THE CONTRACT BETWEEN THE PARTIES

48. As to all claims made in this *Complaint*, the Plaintiff reserves her right under the civil rules to plead alternatively and/or inconsistently and to seek leave of Court to amend this *Complaint* if additional information or evidence becomes known during the course of discovery.

49. Plaintiff hereby incorporates all other paragraphs of this *Complaint* as if fully set forth herein.

50. The Defendant is a healthcare facility licensed under Title 35.

51. The Defendant engaged in harassment, threats and discipline which discriminated against and harmed the Plaintiff because she reported hospital misconduct to officials and through the chain of command.

52. Health care facilities subject to or licensed pursuant to Title 35 of Wyoming law shall not harass, threaten discipline or in any manner discriminate against any resident, patient or employee of any health care facility for reporting to the division a violation of any state or federal law or rule and regulation. Wyo. Stat. Ann. § 35-2-910(b).

53. The Defendant retaliated against the Plaintiff after she blew the whistle on their actions. The behavior discussed and documented through evidence in this matter is shocking, and beyond frightening. It was a horrific experience for the Plaintiff.

54. As a result of the Defendant's conduct, the Plaintiff has suffered actual economic damages and suffered other injuries, damages, and losses, including physical damage, pain and harm, decreased quality of life, severe emotional distress and trauma which has physically manifested itself and pain and suffering in an exact amount to be proved at trial. Furthermore, the conduct of the Defendant is so willful, wanton and malicious, attorney fees and punitive damages are appropriate under law and equity.

55. Additionally, the parties entered into a Wyoming contract entitled "WCHS Whistleblower Policy".

56. This Agreement promised that meetings and identity disclosed with the board president would remain confidential. Confidentiality by the Defendant was breached.

57. The Defendant breached the contract between the parties and the Plaintiff has been damaged as a result. The Defendant is liable to the Plaintiff for these damages, in an exact amount to be proven at the time of trial.

## COUNT 3: DEFENDANT HAS VIOLATED 42 U.S.C. §1985(3)

58. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

59. The Defendant conspired amongst its agents and employees to commit discrimination motivated by class-based animus when the hospital officials and the Doctor threatened and intimidated the Plaintiff with involuntary commitment. This is a process in which individuals who are a threat to themselves or others are immediately taken into protective custody by the state to ensure the safety of all. This process is carefully guarded by our judicial system due to the constitution, civil liberties and freedom at issue. In no way was the Plaintiff, at any time, in need of Title 25 involuntary commitment. This assertion is not only ludicrous, it is frightening. Moreover, the Defendant is a governmental entity under the Wyoming Governmental Claims Act. Certainly, the government cannot threaten to strip us of our civil liberty and freedom when their illegality and ethics are called out through the proper process. To silence the voice of those who speak against you and threaten to place them in an involuntary mental health hold, as a government employer, is nothing that should ever occur in the free United States of America.

60. In furtherance of their conspiracy, the Defendant utilized the power and position of its respective agents and employees to execute its plan of intimidation and retaliation.

61. Each of these agents and employees of Defendant committed an overt act in furtherance of the conspiracy to violate the Plaintiff's rights, both constitutionally and by statute. The Plaintiff was entitled to her civil liberties, freedom, and statutory protections as a whistleblower.

62. This conspiracy was motivated by a class-based invidious discriminatory animus under the Americans with Disabilities Act of 1990, as amended and the Wyoming Fair Employment Practices Act of 1965.

63. The Plaintiff's mental health was weaponized against her, improperly and illegally. Adding insult to injury, HIPPA issues are also of concern and will undoubtedly become more known as discovery commences in this matter.

64. The conspiracy was aimed at interfering with rights that by definition are protected against private, as well as official, encroachment.

65. As a result of the Defendant's misconduct, the Plaintiff requests damages as described above, and in an exact amount to be proven at the time of trial.

### COUNT 4: DEFENDANT HAS COMMITTED NEGLIGENCE WITH THE PLAINTIFF'S DAMAGES OF ANXIETY MANIFESTATION SYMPTOMS CONSTITUTING BODILY INJURY

66. The Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

67. The Defendant owed duties of care to the Plaintiff in this employee/employer relationship that are enacted under Wyoming state law. These duties were breached by the Defendant.

68. As a result of these breaches, the Plaintiff has been damaged as described above, namely constituting bodily injury through the manifestation of significant anxiety and trauma symptoms and impairing her health and quality of life and she requests those damages, in an exact amount to be proven at the time of trial.

### COUNTS 5 - 7: CONSTRUCTIVE TERMINATION, HOSTILE WORK ENVIRONMENT AND DISCRIMINATORY DISCHARGE BECAUSE OF DISABILITY AND/OR NEED FOR ACCOMODATION, IN VIOLATION OF 42 U.S.C. § 12112(b)(5)(b).

69. The Plaintiff reincorporates the previous paragraphs by reference.

70. The Defendant actions, by and through its respective agents and employees, was so egregious, it constitutes constructive termination and hostile work environment under federal and state laws.

71. The Plaintiff was an individual with a disability under 42 U.S.C. § 12102. She was qualified and able to perform the essential functions of her job, without reasonable accommodation.

72. The Defendant claimed to have knowledge of the Plaintiff's health diagnosis. The Plaintiff reserves her treatment privileges of confidentiality at this time but will request sealed discovery throughout this action to discuss these specifics in more detail as relevant.

73. Instead of accommodating any disability, the Defendant instead, weaponized allegations of mental health in an effort to intimidate and silence the Plaintiff.

74. The Plaintiff made her needs and requests known.

75. The Defendant did not provide any reasonable accommodation or medical leave.

76. Instead, the Defendant constructively terminated the Plaintiff's employment because of her disability or because of the need to provide her with a reasonable accommodation, in violation of 42 U.S.C. § 12112(b)(5)(b) after an extensive bought of retaliation and hostile work environment.

77. The unlawful employment practices complained of in the preceding paragraphs were intentional and were done with malice or reckless indifference for the Plaintiff's federally and state protected rights.

78. As a direct and proximate cause of the Defendant's violation of the law, as alleged herein, the Plaintiff has suffered damages including lost wages and benefits, front pay, back pay, lost economic potential, harm to her reputation, and will continue to suffer humiliation, embarrassment, loss of enjoyment of life, emotional pain, mental suffering, and inconvenience, all in an amount to be shown according to proof at time of trial and for which damage she should be justly compensated.

79. The Plaintiff additionally requests attorney fees pursuant to the statutory authority described herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Amanda McDade respectfully requests that this Court enter judgment in her favor and against the Defendant, and award her all relief as allowed by law, including but not limited to the following:

a) All declaratory relief and injunctive relief, as appropriate;

b) Actual economic damages, including but not limited to back pay, front pay, and lost benefits, as established at trial;

c) Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

d) Punitive damages for all claims as allowed by law, to the maximum amount permitted and, in an amount, to be determined at trial;

e) Exemplary damages for all claims as allowed by law, to the maximum amount permitted and determined at trial;

f) Prejudgment and post-judgment interest at the highest lawful rate;

g) A tax-offset;

h) Attorneys' fees and costs; and

i) Such further relief as justice requires, the premises considered.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all issues and claims raised in this Complaint.

Date: December 6, 2023

                                        Respectfully submitted,

                                        /s/ Cassie Craven
                                        Cassie Craven, 7-5664
                                        Longhorn Law LLC
                                        109 E. 17th St. Suite 11
                                        Cheyenne, WY 82001
                                        307-823-3062
                                        cassie@longhornlawllc.com