IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| AMANDA MCDADE,<br><br>Plaintiff,<br><br>VS.<br><br>WESTON COUNTY HOSPITAL DISTRICT d/b/a WESTON COUNTY HEALTH SERVICES,<br><br>Defendant, | Case No. 23-CV-232 |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on the motion to dismiss (ECF No. 7) and supporting brief (ECF No. 8) filed by Defendant Weston County Hospital District, doing business as Weston County Health Services Motion. Plaintiff Amanda McDade filed a response (ECF No. 12) and Defendant filed a reply (ECF No. 13). Having considered the parties' briefs and exercising jurisdiction pursuant to 28 U.S.C. § 1331 and 1367, the Court finds the motion should be granted.

### FACTUAL BACKGROUND

The Court accepts the following allegations, taken from the Complaint, as true for purposes of resolving the present motion to dismiss. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In June 2019, Plaintiff Amanda McDade was hired as a human resource generalist for Weston County Hospital District (WCHD). (ECF No. 1 ¶ 15.) In

this role, McDade had access to documents relating to hospital operations, including payroll, timekeeping, and employee records. (*Id.* ¶ 16.) McDade believed money mismanagement, labor law violations, and discriminatory policies were occurring at the hospital. (*Id.* ¶¶ 17-18.) McDade reported her concerns to the Board of Trustee's president, Connie James. (*Id.* ¶ 18.) In response, McDade asserts she was told to modify hospital records to conceal the alleged wrongdoing. (*Id.* ¶ 19.) McDade refused to do so. (*Id.*)

McDade alleges she was subjected to a hostile work environment as a result of her whistleblowing, which culminated on October 14, 2021. (*Id.* ¶ 20, 22.) That day, McDade's personal treating physician, Dr. Sara Thurgood—also employed by WCHD—made an "uninvited and unannounced" visit to McDade's office at the hospital. (*Id.* ¶ 28.) Dr. Thurgood entered McDade's office, closing the door behind her, and explained she was there "first and foremost" as McDade's doctor. (*Id.* ¶¶ 30-32.) After discussing McDade's "previous treatments," Dr. Thurgood intimated the hospital's management was concerned about McDade. (*Id.* ¶ 33-34.) Dr. Thurgood stated, "they've got an employee they're concerned about with what you've taken to the board, I don't know the details but, they're concerned about that but then they're also concerned with some of the things that you've said and things that would suggest an almost manic." (*Id.* ¶ 36.) McDade denied being manic. (*Id.* ¶ 37.) Dr. Thurgood agreed McDade did not appear manic. (*Id.* ¶ 38.)

As the conversation continued, Dr. Thurgood told McDade the hospital's management was considering having her involuntarily committed, which McDade construed to mean a Title 25 hold. (*Id.* ¶¶ 39-40.) Dr. Thurgood explained she could not

assess McDade for potential commitment because it would be a conflict of interest given Dr. Thurgood was McDade's physician and they both worked at WCHD. (*Id.* ¶ 39, 43.)

McDade ended the conversation by leaving her office and exiting the hospital. (*Id.* ¶ 44.) During the encounter and for several days following, McDade felt anxious and suffered physical manifestations of anxiety. (*Id.* ¶ 27, 45.) McDade later tendered her resignation to WCHD by email. (*Id.* ¶ 45.) As stated in her Charge of Discrimination filed with the Equal Employment Oppurtunity Commission (EEOC) referenced in her complaint (*Id.* at ¶ 7), she resigned on October 14, 2021. (ECF No. 8 at 22, ¶ 10(a)).

## PROCEDURAL BACKGROUND

On April 11, 2022, McDade timely filed a Charge of Discrimination[1] against WCHD with the Wyoming Fair Employment Program and the EEOC. (*Id.* ¶ 7; ECF No. 8 at 21.) The Charge of Discrimination appears to be a standard EEOC Form 5 completed by McDade. (*See* ECF No. 8 at 21-22.) In the Charge, McDade alleges WCHD discriminated against her based on disability by "fail[ing] to make a reasonable accommodation," and "subjected [her] to religion- and disability-based harassment and intimidation." (*Id.* at 21.) The Charge also alleges McDade "suffered an adverse action" as a result of her "protected opposition to Title VII and ADA prohibited discrimination," rendering her working conditions so difficult that a reasonable person in her position would feel compelled to resign and she in fact resigned. (*Id.* at 22.) McDade received a right to sue letter from the

---

[1] WCHD submitted a copy of the Charge of Discrimination with its motion to dismiss. (ECF No. 8 at 21-21.) The Charging document is referenced in the Complaint (ECF No. 1 ¶ 7), is central to Plaintiff's federal disability discrimination claims, and the parties do not dispute the document's authenticity. Accordingly, the Court may consider the document without converting the motion to dismiss to a motion for summary judgment. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

EEOC. (ECF No. 1 ¶ 7.) McDade also gave notice to WCHD of her state-law claims, pursuant to the Wyoming Governmental Claims Act, on December 5, 2023. (*Id.* ¶ 14.)

In the present action, McDade asserts WCHD committed negligence, breach of employment contract, whistleblower retaliation in violation of Wyo. Stat. Ann. § 35-2-910, civil conspiracy in violation of 18 U.S.C. § 1985(3), and disability discrimination under the ADA. Before the Court is WCHD's motion to dismiss all claims in the Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss, a plaintiff must plead facts sufficient to state a claim to relief that is plausible on its face." *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith*, 561 F.3d at 1098. "Threadbare recitals of a cause of action, supported by mere conclusory statements" are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678 (citation

omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citations omitted).**DISCUSSION**

## 1. The Wyoming Governmental Claims Act bars Plaintiff's negligence and breach of contract claims.

WCHD argues McDade failed to timely comply with the claim notice requirement of the Wyoming Governmental Claims Act (WGCA), and therefore her claims for negligence and breach of contract are barred. (ECF No. 8 at 5.) The Court agrees.

Before a suit based either in contract or tort may be brought against a governmental entity in Wyoming, "the claimant must follow the procedure outlined in the WGCA and the Wyoming Constitution." *Casey v. Teton Cnty. Hosp. Dist.*, 517 P.3d 536, 539 (Wyo. 2022) (citing Wyo. Stat. Ann. § 1-39-113 and Wyo. Const. art. 16, § 7) (footnotes omitted). Principally, a claimant must comply with the WGCA's notice of claim requirement, which provides:

> No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:
> (i) Not reasonably discoverable within a two (2) year period; or
> (ii) The claimant failed to discover the alleged act, error or omission with the two (2) year period despite the exercise of due diligence.

Wyo. Stat. Ann. § 1-39-113(a). Wyoming demands "strict compliance with the WGCA's notice provision," and "failure to strictly comply may result in the dismissal of a plaintiff's claim." *Casey*, 517 P.3d at 541. Under § 1-39-113(a), notice to the governmental entity must be provided no more than two years from the act, error or omission, unless it was not

reasonably discoverable within that two-year period of time. *See Mitchell v. Rust*, 529 P.3d 1062, 1068 (Wyo. 2023).

The Complaint alleges McDade presented notice of her claims to WCHD on December 5, 2023. (ECF No. 1 ¶ 14.) WCHD disputes receiving such notice. Regardless, the notice would be tardy. To comply with the WGCA, McDade was required to present notice of her claims to WCHD within two years of October 14, 2021, the date on which the negligence and breach of contract claims accrued. McDade failed to do so.

McDade argues the Charge of Discrimination provided WCHD with sufficient notice of her claim. But McDade fails to explain how an EEOC form alleging employment discrimination in violation of federal law would put WCHD on notice of potential state law claims under the WGCA for negligence and breach of contract. The Charging Document does not so much as reference negligence or breach of contract, and therefore fails to notify WCHD of "the claim upon which the action is based," as required by the WGCA. § 1-39-113(a). Likewise, with respect to the claims of breach of contract and negligence, the Charging Document does not state "[t]he time, place and circumstances of the alleged loss or injury including the name of the public employee involved, if known." § 1-39-113(b).

McDade's argument that the documents and evidence she submitted to the Department of Labor Standards provided WCHD with notice of her claims is also without merit. If McDade were correct, WCHD would be put in the untenable position of combing through documents in search of potential claims and then reading McDade's mind to determine which of those claims she may want to pursue. The WGCA avoids such a result by requiring a claimant submit an itemized statement of her claims to the governmental

entity. § 1-39-113(a). Strict compliance with the WGCA is required, and the EEOC Charging Document falls far short. Accordingly, the Court finds the negligence and breach of contract claims barred by the WGCA.

### 2. Wyoming Statute § 35-2-910 does not create a private cause of action for whistleblower retaliation.

The next issue is whether McDade may assert a private cause of action against WCHD for allegedly committing whistleblower retaliation in violation of Wyo. Stat. Ann. § 35-2-910. WCHD argues Section 35-2-910 does not create a private cause of action, as evidenced by its regulatory nature and that enforcement is vested exclusively in the Department of Health. McDade seemingly concedes the absence of an express right of action in the statute, instead arguing the statute should be interpreted as imposing a duty upon health care facilities, such as WCHD, that may be pursued in a private action. In support, McDade argues the "fundamental purpose" of the statute is to protect whistleblowers and the statute contains no language prohibiting a private cause of action.

The relevant portion of the statute is subsection (b), and provides as follows:

> Health care facilities subject to or licensed pursuant to this act shall not harass, threaten discipline or in any manner discriminate against any resident, patient or employee of any health care facility for reporting to the division a violation of any state or federal law or rule and regulation. Any employee found to have knowingly made a false report to the division shall be subject to disciplinary action by the employing health care facility, including but not limited to, dismissal.

Wyo. Stat. Ann. § 35-2-910(b). Having reviewed the statute, the Court agrees there is no express right of action under § 35-2-910(b). Thus, the question is whether such a right may be implied. It cannot.

In construing a statute, "the Court applies the Wyoming Supreme Court's usual rules of statutory interpretation." *Breen v. Pruter*, 14-CV-00081-F, 2015 WL 6163439, at *11 (D. Wyo. Aug. 6, 2015). "The primary objective in statutory interpretation is to give effect to the legislature's intent." *Sinclair Wyo. Refin. Co. v. Infassure, Ltd.*, 486 P.3d 990, 994 (Wyo. 2021) (quotation marks and citation omitted). The court looks to the language of the statute for guidance as to legislative intent. *See id.* at 994-95. When the language is "clear and unambiguous," the plain language is given effect and the court need not resort to rules of construction. *Id.* at 994 (citation omitted). The court must "construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia*." *Stewart Title Guar. Co. v. Tilden*, 110 P.3d 865, 871 (Wyo. 2005) (citation omitted). "The rules of statutory construction apply only if the statutory language is ambiguous or subject to varying interpretations." *Ultra Res., Inc. v. Hartman*, 226 P.3d 889, 916 (Wyo. 2010) (citation omitted).

In *Herrig v. Herrig*, 844 P.2d 487, 492 (Wyo. 1992), the Wyoming Supreme Court considered whether there exists a private cause of action for violation of Wyo. Stat. Ann. § 26-13-124, which prescribes unfair claim settlement practices. The court held the legislature did not intend to create a private cause of action under that section, reasoning:

> The Wyoming Insurance Code, Wyo. Stat. §§ 26–1–101 to 26–44–117 (1991 & Supp. 1992), is a comprehensive enactment for the regulation of the insurance industry. The insurance commissioner is charged with the responsibility of enforcing the provisions of the Code. Section 26-2-109(a)(iii). In order to carry out this responsibility, the insurance commissioner is granted broad rule making, investigatory, and enforcement authority. *See generally* §§ 26–2–101 to –130. Absent an express provision to the contrary, we do not believe that the Wyoming Legislature intended for the Code to also be enforced by private action.

*Id.* at 494.

In this case, the language of Section 35-2-910(b) is unambiguous, and therefore its plain language will be given effect. The plain language of the statute prohibits health care facilities licensed under or subject to Article 9 from engaging in retaliatory discrimination against a patient, resident, or employee of the facility who reported a violation of state or federal law or rule and regulation to the appropriate division of the Department of Health.[2] The statute requires disciplinary action be taken against an employee that makes a false report to the Department of Health. The statute neither explicitly nor implicitly creates a private cause of action. Like the statute at issue in *Herrig*, Section 35-2-910 is nestled within Article 9's comprehensive licensure scheme for health care facilities. *See* §§ 35-2-901 to -914. The Department of Health is charged with promulgating and enforcing rules and regulations for health care facilities licensed under Article 9, § 35-2-908, and a division of the Department of Health controls issuance and revocation of licenses, §§ 35-2-904(a), -905(a). Compliance with Article 9 is a prerequisite to obtaining a license, § 35-2-904(a), and a license may be revoked, denied, or suspended as a result of a health care facility's violation of Article 9, § 35-2-905(a). Finally, Article 9 does not contain an express cause of action. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1326 (Wyo. 1995) ("[E]ven if statutory violations are demonstrated, a private cause of action may not lie in the face of congressional silence."); *Sorensen v. State Farm Auto. Ins. Co.*, 234 P.3d 1233, 1239 (Wyo.

---

[2] Notably, McDade reported the suspected money mismanagement, labor law violations, and discriminatory policies at the hospital to the Board of Trustee's president, not the Department of Health. Thus, even if § 35-2-910(b) created a private cause of action, McDade would still fail to state a claim based on a violation of the statute.

Page **9** of 18

2010) (noting the legislature "employ[s] language leaving no room for doubt" when creating a new duty). And to the extent McDade states a claim of negligence based on a breach of a statutory duty imposed by Section 35-2-910(b), if such a duty exists, that claim, too, is barred by the WGCA.

### 3. Plaintiff fails to state a claim of civil conspiracy under of 42 U.S.C. § 1985(3).

The Complaint alleges WCHD conspired to commit discrimination motivated by class-based animus toward the disabled in violation of 42 U.S.C. § 1985(3). To state a claim for civil conspiracy under § 1985(3), a plaintiff must allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the coconspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The "class-based animus" required for § 1985(3) has been narrowly construed, for example, as not including "economic or commercial animus." *United Bhd. Of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 838 (1983). And the Supreme Court has frequently questioned "whether § 1985 was intended to reach any class-based animus other than against Negroes and those who championed their cause." *Id.* at 836; *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

WCHD correctly asserts McDade's claim of civil conspiracy under § 1985(3) is barred by Tenth Circuit precedent. *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983) (holding physical disability does not constitute a class for purposes of § 1985); *Phibbs v. Am. Prop. Mgmt.*, 60 Fed. App'x 738, at *1-2 (10th Cir. 2003) (affirming dismissal of § 1985(3) claim based on *Wilhelm* because disabled persons do not constitute a class under § 1985(3)); *McMullin v. Ashcroft*, 337 F.Supp.2d 1281, 1291-92 (D. Wyo.

2004) (granting judgment on the pleadings against disabled officer suffering from depression because disabled persons do not constitute a class under § 1985(3)); *Sullivan v. Hartford Fin. Servs. Grp., Inc.*, 22-2095-KHV-ADM, 2022 WL 2309095, at *4 (D. Kan. Apr. 20, 2022) (dismissing § 1985(3) claim because "disability-related claims are not actionable under § 1985(3)"); *Hall v. Doering*, 997 F.Supp. 1445, 1452 (D. Kan. 1998) ("The disabled are not a class for the purposes of Section 1985.").

Although Plaintiff flippantly claims the case law cited in WCHD's motion to dismiss, and cited herein by the Court, is "inapplicable," (ECF No. 12 at 11), Plaintiff fails to explain why or cite any contrary authority. Having thoroughly reviewed the applicable case law in this circuit, the Court has found no authority supporting Plaintiff's position. Thus, to the extent Plaintiff asserts Defendant's alleged actions are "obviously" illegal, the Court disagrees with such a conclusory statement. (ECF No. 12 at 11.) Accordingly, the Court applies this circuit's precedent holding disabled persons do not constitute a class of persons entitled to protection under Section 1985(3). Plaintiff's claim therefore fails.

4. **Plaintiff's disability discrimination claims fail for lack of a cognizable disability.**

The Complaint asserts several disability discrimination claims under the Americans with Disabilities Act. The Court construes the Complaint as raising claims of constructive termination, hostile work environment, failure to accommodate, and discriminatory discharge because of a disability. (ECF No. 1 at 12.) With exception of the failure to accommodate claim, the same analytical framework applies to Plaintiff's disability discrimination claims. To sustain a claim of disability discrimination under the ADA,

Plaintiff must show she "(1) was disabled [within the meaning of the ADA]; (2) was qualified, that is, could perform the essential functions of the job in question, with or without accommodation; and (3) suffered adverse employment action because of the disability." *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001); *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). To state a failure-to-accommodate claim, Plaintiff need only allege (1) she is disabled, (2) she is otherwise qualified, and (3) she requested a plausibly reasonable accommodation. *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 674 (10th Cir. 2021). Where the elements of these respective tests overlap—such as the disability element—the Court consolidates its analysis into one discussion.

### a. Disabled

Plaintiff's discrimination claims suffer from the same fatal pleading deficiency: absence of an alleged disability. A person is "disabled" under the ADA if she has either (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Although the term disability is to be construed broadly, *Allen v. SouthCrest Hosp.*, 455 Fed. App'x 827, 834 (10th Cir. 2011), this does not relieve a plaintiff from pleading facts demonstrating she is disabled as that term is defined in the ADA, *see Steele v. Thiokol Corp.*, 241 F.3d 1248, 1253 (10th Cir. 2001) ("to bring any claim under the ADA, a plaintiff must first establish that he is a qualified individual with a disability"). Here, the Complaint alleges in a conclusory fashion that "Plaintiff was an individual with a disability under 42 U.S.C. § 12102," (ECF No. 1 ¶ 71) but, as WCHD

aptly points out, the Complaint does not identify what Plaintiff's disability is or how it affects her life. Whether Plaintiff is disabled within the terms of the ADA is a question of law, *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007), and the Complaint alleges no facts showing Plaintiff suffers from or has a record of a physical or mental impairment.

Plaintiff contends the Complaint alleges facts "from which an inference could be drawn that she was regarded as having" a disability. (ECF No. 12 at 6.) True, the Complaint alleges WCHD "claimed to have knowledge of the Plaintiff's health diagnosis," though it does not identify what that health diagnosis is. (ECF No. 1 ¶ 72). WCHD argues Plaintiff nonetheless cannot pursue a "regarded as" disabled claim because she failed to exhaust her administrative remedies on this point.

Generally, exhaustion of administrative remedies is a prerequisite to suit and an employer may raise "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident" as an affirmative defense. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). "[E]ach discrete incident of discriminatory or retaliatory treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.* at 1181 (brackets, quotation marks, and citation omitted). "The EEOC charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (quotation marks and citation omitted). A "plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to

follow the charge of discrimination submitted to the EEOC." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quotation marks and citation omitted).

McDade's Charge of Discrimination to the EEOC does not allege WCHD regarded her as disabled. (*See* ECF No. 8 at 21.) To establish WCHD regarded McDade as disabled, she had to allege WCHD "was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016). McDade's Charge alleges only that she is a qualified individual with a disability that "substantially limits a major life activity." (ECF No. 8 at 21.) Unlike the Complaint, the Charge does not allege WCHD was aware of Plaintiff's health diagnosis. *See Wennerstrom v. City & Cnty. of Denver*, 19-cv-03251-NYW, 2021 WL 1339396, at *7 (D. Colo. 2021) (holding plaintiff failed to exhaust administrative remedies on "regarded as" claim where EEOC charge only merely alleged plaintiff was disabled, not that employer was aware of impairment). Plaintiff's failure to allege anything in her EEOC Charge of Discrimination concerning her "regarded as" disability prevents her from raising it here. *See McCray v. McDonough*, 2023 WL 171927, at 4-5 (D. Kan. Jan. 12, 2023) (plaintiff's allegations in an EEOC charge must contain sufficient facts concerning the discriminatory and retaliatory actions underlying each claim such that the conduct alleged in the complaint would fall within the scope of an EEOC investigation which is reasonably expected given the charge of discrimination submitted to EEOC).

A cognizable disability is a necessary element to all of Plaintiff's disability discrimination claims; thus, those claims necessarily fail. Nonetheless, Plaintiff's

discriminatory discharge, hostile work environment, and failure-to-accomodate claims suffer further deficiencies worth addressing.

### b. Discriminatory Discharge

For discriminatory discharge, a plaintiff must allege facts demonstrating "that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1223 (10th Cir. 1997); *Bateman v. Nexstar Media Gp.*, No. 20-4114, 2021 WL 4520982, at *3 (10th Cir. Oct. 4, 2021) (unreported). That is, the plaintiff must show "disability was a determining factor in the employer's decision." *Morgan*, 108 F.3d at 1324 (citation omitted). Although similar, discriminatory discharge is a distinct claim from constructive discharge. *See Green v. Brennan*, 578 U.S. 547, 555-56 (2016) (noting elements for each cause of action). In a discriminatory discharge case, the employer actually terminates the employee, whereas in a constructive termination case, the employer makes working conditions so unbearable that the employee has no other choice but to quit. *Id.* Here, Plaintiff asserts she resigned. She does not claim to have been fired. Thus, the Complaint does not state a discriminatory discharge claim.

### c. Hostile Work Environment

Hostile work environment "claims are based on a series of individual acts that, considered together, 'constitute one unlawful employment practice.'" *Goodson v. DeJoy*, No. 22-1338, 2023 WL 4782947, at *9 (10th Cir. Jul. 27, 2023) (unreported) (quoting *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016)). "A plaintiff claiming hostile work environment 'must show that a rational jury could find that the workplace was

permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

Like much of Plaintiff's Complaint, this claim suffers from too little supporting factual averments to cross the line from speculation to plausible. Plaintiff repeatedly alleges she was exposed to a hostile work environment, but the only supporting facts she alleges pertain exclusively to the events that occurred on October 14, 2021. The Tenth Circuit has rejected hostile work environment claims based on a single or a few isolated instances of disability-based animosity. *Ewing v. Doubletree DTWC, LLC*, 673 Fed. App'x 808, 815 (10th Cir. 2016); *see also Bird v. West Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016); *Wilkins v. Chevron*, 370 Fed. App'x 919, 920 n. 2 (10th Cir. 2010) (noting three isolated instances are insufficient to state a hostile work environment claim).

Even assuming Plaintiff's single alleged interaction could form the basis of a hostile work environment claim, Plaintiff's claim would still fail because she has failed to demonstrate the hostile work environment was *because of* her disability. *Williams*, 849 F.3d 889, 897-98 (10th Cir. 2017). To the contrary, the Complaint pleads the motivation behind the alleged harassment was WCHD's desire to "cover up their misdeeds" and retaliate against McDade for blowing the whistle on money mismanagement, labor law violations, and discriminatory policies at the hospital. Plaintiff confuses why something is done and how it is done. Here, WCHD allegedly asserted Plaintiff was manic and

threatened involuntary commitment (the how) because WCHD wanted to intimidate and silence Plaintiff in retaliation for reporting illegal activity (the why). Plaintiff plainly does not assert any disability-related animus behind WCHD's alleged action.

### d. Failure to Accommodate

As previously mentioned, to state a failure-to-accommodate claim, a plaintiff must demonstrate she is disabled, otherwise qualified for her position, and "requested a plausibly reasonable accommodation." *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 674 (10th Cir. 2021) (quotation marks and citation omitted). As relevant here, the Complaint alleges Plaintiff "was qualified and able to perform the essential functions of her job, without reasonable accommodation," "Plaintiff made her needs and requests known, but "Defendant did not provide any reasonable accommodation or medical leave." (ECF No. 1 ¶¶ 71, 74-75.) Plaintiff's allegations do not state a failure-to-accommodate claim; if anything, the allegations negate a failure-to-accommodate claim because Plaintiff readily admits she did not require an accommodation to perform her job. Beyond that, the conclusory allegations in the Complaint do not rise to the level of plausible. The Complaint does not even make a conclusory pass at identifying Plaintiff's disability or perceived disability, let alone set forth factual allegations to allow a reasonable inference. Having failed to identify the disability, the Complaint explicably fails to identify what accommodation was needed or requested. For these many reasons, Plaintiff has failed to state a plausible failure-to-accommodate claim.

## CONCLUSION

Plaintiff's Complaint fails to state a plausible claim upon which relief may be granted. As a result, the Court finds Defendant's motion to dismiss will be granted.

**IT IS THEREFORE ORDERED** that Defendant Weston County Hospital District's motion to dismiss (ECF No. 7) is hereby **GRANTED.** The Clerk of Court will please enter a judgment and close this case.

Dated this 19th day of April, 2024.

Scott W. Skavdahl
United States District Judge